UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

PAYTON THOMAS JARRARD,

Plaintiff,

v.

CAUSE NO. 3:18-CV-825-DRL

RYAN DUNLAP and KYLE CASSIDY,

Defendants.

OPINION AND ORDER

Payton Thomas Jarrard, a prisoner without a lawyer, proceeds against Correctional Officers Ryan Dunlap and Kyle Cassady "in their individual capacities for compensatory and punitive damages for failing to intervene to stop Mark Hubbard from punching him in the face on April 18, 2018, in violation of the Eighth Amendment[.]" ECF 45 at 3.[1] The defendants filed a summary judgment motion. ECF 121. Mr. Jarrard filed a response, and the defendants filed a reply. ECF 125, 126. The summary judgment motion is ripe for ruling.

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying"

---

[1] Mr. Jarrard was also granted leave to proceed on an Eighth Amendment claim against Correctional Officer Mark Hubbard "for punching him in the face on April 18, 2018," but Officer Hubbard was dismissed from this action because the United States Marshal Service was unable to locate and serve him. ECF 90.

the evidence that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In ruling on a summary judgment motion, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). The court will not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne*, 337 F.3d at 770. If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Id.*

A bystander officer may be held liable for the excessive force of another officer if the bystander officer "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). "[A] 'realistic opportunity to intervene' may exist whenever an officer could have 'called for a backup, called for help, or at least cautioned [the excessive force defendant] to stop.'" *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (quoting *Yang v.*

2

*Hardin*, 37 F.3d 282 (7th Cir. 1994)). The court considers the length of the excessive force, the number of blows involved, and the positions of the bystander officers relative to the altercation. *Kirkwood v. DeLong*, 683 F. Supp. 2d 823, 830 (N.D. Ind. 2010).

At his deposition, Mr. Jarrard testified that, on April 18, 2018, he had a heated argument with Officer Hubbard while being escorted back to his cell. ECF 121-1 at 16. After Mr. Jarrard was placed back in his cell, he threw a liquid substance on Officer Hubbard through the bars of the cell. *Id.* at 17-18. In response, Officer Hubbard deployed OC spray on Mr. Jarrard and ordered him to cuff up. *Id.* at 18-19. Mr. Jarrard cuffed up behind his back and was escorted to the front of the cell house by Officers Dunlap and Cassady, with each officer holding one of his arms. *Id.* While Mr. Jarrard was being escorted, he continued to yell and cuss at everyone around him. *Id.* at 20-22. When Mr. Jarrard reached the front of the cell house, Officer Hubbard approached him and punched him in the face. *Id.* at 22-23. Officer Hubbard proceeded to punch Mr. Jarrard a total of six times over a period of ten to fifteen seconds. *Id.* Officers Dunlap and Cassady did nothing to stop Officer Hubbard. *Id.* at 24. A sergeant ran down from the officer's station to stop Officer Hubbard and escorted Mr. Jarrard to a decontamination shower. *Id.* at 24-25.

Here, the defendants concede Officer Hubbard used excessive force on Mr. Jarrard by punching him in the face. ECF 122 at 5. They also concede they had reason to know Officer Hubbard was using excessive force once he threw the first punch. *Id.* Instead, they argue only that they did not have a realistic opportunity to intervene to prevent Officer

Hubbard's excessive force from occurring. *Id.* at 5-7. Each defendant will be addressed in turn.

Officer Dunlap argues he did not have a realistic opportunity to prevent Officer Hubbard's excessive force from occurring because he was standing behind Mr. Jarrard with only one hand on him at the time of the use of force and he was unable to pull Mr. Jarrard away from Officer Hubbard because of Mr. Jarrard's size. ECF 121-2 at 2; ECF 122 at 6-7. However, Mr. Jarrard has provided evidence Officer Dunlap was standing right next to him while Officer Hubbard struck him six times over a period of fifteen seconds. Construing these facts in the light most favorable to Mr. Jarrard, a reasonable jury could conclude Officer Dunlap could have made some effort to prevent or limit Officer Hubbard's excessive force. *See Abdullahi*, 423 F.3d at 774 (a realistic opportunity to intervene may exist when a bystander officer could have called for help or cautioned the officer using excessive force to stop). Officer Dunlap attests all staff in the room yelled for Officer Hubbard to stop once he began striking Mr. Jarrard (ECF 121-2 at 2), but Mr. Jarrard disputes this fact, asserting that "neither defendant yelled stop or told Officer Hubbard to stop assaulting plaintiff" (ECF 125 at 2). Because a reasonable jury could conclude Officer Dunlap had a realistic opportunity to prevent Officer Hubbard's excessive force from occurring but made no effort to do so, summary judgment must be denied as to Officer Dunlap.

Officer Cassady argues he did not have a realistic opportunity to prevent Officer Hubbard's excessive force from occurring because, unlike Officer Dunlap, he was not involved in removing or escorting Mr. Jarrard from his cell and was approximately

4

twenty feet away when Officer Hubbard began striking Mr. Jarrard. ECF 122 at 5-6; ECF 118 at 2-3. However, Mr. Jarrard testified at his deposition that Officer Cassady was involved in removing and escorting him from his cell, so this is a disputed fact. Officer Cassady argues Mr. Jarrard could not have known who escorted him from his cell because he had been sprayed with OC spray and could not see, but a reasonable jury could conclude Mr. Jarrard was aware he was being escorted by Officer Cassady despite being unable to see clearly. Moreover, accepting as true that Officer Hubbard struck Mr. Jarrard six times over a period of fifteen seconds, a reasonable jury could conclude Officer Cassady could have made some effort to prevent Officer Hubbard's excessive force even from twenty feet away. *See Abdullahi*, 423 F.3d at 774; *Kirkwood*, 683 F. Supp. 2d at 830 (a reasonable jury could conclude a bystander officer had a realistic opportunity to prevent excessive force where the force involved three blows over a twenty second period and the bystander officer was ten feet away when the force occurred). Officer Cassady also argues all staff in the room yelled at Officer Hubbard to stop once he began striking Mr. Jarrard, but this is a disputed fact, as discussed above. Thus, because a reasonable jury could conclude Officer Cassady had a realistic opportunity to prevent Officer Hubbard's excessive force from occurring but made no effort to do so, summary judgment must be denied as to Officer Cassady.

Last, both defendants argue they are entitled to qualified immunity because "failing to intervene in the unexpected use of excessive force occurring minutes after an inmate assaults a correctional officer, where the officers warned him to stop, is not clearly established to be a Constitutional violation." ECF 122 at 7-8. However, this argument fails

5

because it asks the court to resolve the disputed fact of whether the defendants warned Officer Hubbard to stop in favor of the defendants. *See Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir. 2014) ("[t]he court cannot resolve disputed issues of fact when it addresses [whether the facts alleged describe a violation of a protected right] because the ordinary rules governing summary judgment apply in that situation"); *Walker v. Benjamin,* 293 F.3d 1030, 1037 (7th Cir. 2002) (recognizing that disputed material facts regarding the elements of a constitutional claim precludes dismissal based on qualified immunity). Crediting Mr. Jarrard's version of events, it would be clear to a reasonable officer that failing to intervene while a fellow officer struck a handcuffed inmate six times in the face is unlawful. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"). Thus, the defendants cannot avoid trial on grounds of qualified immunity.

For these reasons, the court DENIES the defendants' motion for summary judgment (ECF 121).

SO ORDERED.

April 19, 2022                                              *s/ Damon R. Leichty*
                                                            Judge, United States District Court